**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**MARK BEASON BURKE**                                                                   **PLAINTIFF**

**VERSUS**                                           **CIVIL ACTION NO. 1:08cv1496-RHW**

**DAVID ALLISON, RITA LUMPKIN
and PEARL RIVER COUNTY**                                             **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court is [104] the motion for summary judgment filed February 19, 2010, by Defendant Rita Lumpkin. Plaintiff's response to the motion was due by March 18, 2010, but Plaintiff has neither responded, nor requested any extension of time to do so.[1] *L.U.Civ.R.* 7(b)(4). Despite Plaintiff's lack of a response, the Court must address the motions on the merits as they are dispositive in nature. *L.U.Civ.R.* 7(b)(3)(e).

### Procedural History and Facts

Mark Burke filed this *pro se* prisoner's civil rights complaint December 22, 2008, pursuant to 42 U.S.C. § 1983. On July 23, 2009, the Court conducted a hearing pursuant to 28 U.S.C. §1915A[2] to examine the allegations contained in the complaint. The parties consented to the exercise of jurisdiction by a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c) and *Fed.R.Civ.P.* 73, and the case was reassigned to the undersigned for all further proceedings. [95] and [96]

---

[1] The docket reflects that on March 22, 2010, Burke filed [112] a response to other defendants' motions to dismiss or for summary judgment, which counsel for Lumpkin apparently perceived as a response to the instant motion as he filed [113] a reply on Lumpkin's behalf on March 26, 2010.

[2] 28 U.S.C. §1915A. Screening.
(a) Screening. The Court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

In the screening hearing, Burke testified he was incarcerated in the Pearl River County Jail on a charge of possession of a controlled substance. He stated he was first arrested just after Hurricane Katrina,[3] but he bonded out of jail within about three days, then his bondsman went off his bond in February 2008, and he spent approximately three weeks in jail before again making bond in March. Burke's inmate file shows he was arrested and bonded out of jail several times between the 2005 arrest and November 18, 2008.[4] When he picked up another possession of controlled substance charge,[5] Burke's bond was revoked, and he was again returned to jail on November 18, 2008, where he remained until May 14, 2009. [110, p. 1, bates 1)[6] Burke pled guilty to possession of a controlled substance, and was sentenced March 16, 2009, to eight years in custody of the Mississippi Department of Corrections, with four years to serve, and four years post-release supervision. At the time of the July 23, 2009 hearing, he was incarcerated at South Mississippi Correctional Institution at Leakesville, MS. [104-3, pp. 7-11]

Burke testified in the screening hearing that Nurse Rita Lumpkin denied him adequate medical care during his incarceration in Pearl River County, in violation of his constitutional rights, and the Court allowed Burke to amend his complaint to add his claim against Lumpkin.

---

[3] Hurricane Katrina struck on August 29, 2005.

[4] Arrested March 3, 2007 for public drunk and misdemeanor possession of controlled substance [110-3, pp. 10-16, bates 200-201], released on bond March 5, 2007 [110-3, p. 4-8, bates 194-196]; arrested and released March 16, 2006 [110-2, p. 24, 33, bates 124, 133]; arrested November 3, 2007 for profanity/drunkenness in public [110-2, p. 16, bates 116], released on payment of fines November 3, 2007 [110-2, p. 12, bates 112]; arrested March 5, 2008 for possession of a controlled substance [110-2, pp. 86-90, bates 186-190 and 110-3, pp. 1-3, bates 191-193], released on bond March 6, 2008 [110-2, p. 79-84, bates 179-184]; arrested April 2, 2008 for possession of a controlled substance [110-2, p. 63, bates 163], released on bond April 22, 2008 [110-2, p. 59, bates 159]; arrested April 25, 2008 for public drunk, released the same day on bond [110-2, pp. 71, 75, bates 171, 175]; arrested May 6, 2008 for simple assault [110-2, pp. 34, bates 151], released on bond May 16, 2008 [110-2, p. 33-37, bates133-137].

[5] Burke testified he actually had three possession of controlled substance charges. He pled guilty to one, and the other two were nolle prosequi. [104-3, p.9-10]

[6] Sealed exhibits are referenced by both the docket entry and the bates number.

The amended pleadings allege that Lumpkin was "in charge of the nurses station at the Pearl River County Jail," and that she told Burke when he entered the jail that his medication would be taken from him for the duration of his stay at the jail. Burke alleges he suffered needlessly from being denied his medication. [48, p. 4] Burke further alleges that on November 22, 2008, he lost consciousness due to high blood pressure and hit his head on the metal bed rail,[7] and was later diagnosed with a neck injury for which he was never taken to a specialist; that he did not receive timely responses to his sick call requests for dental problems, and was not taken to an oral surgeon although the dentist who pulled one of his teeth advised an oral surgeon would have to attend to two other decayed teeth; that he has been denied treatment for hepatitis B, and was denied access to results of blood tests, and "has had symptoms of liver disease" due to the denial of treatment. [48, p. 5; 29, p. 1]

      Rita Lumpkin is a licensed Certified Family Nurse Practitioner who worked part-time at the Pearl River County Correctional Facility (the jail) during the time Burke was incarcerated there. Ms. Lumpkin worked approximately four to ten hours per week, setting her own schedule, but usually coming to the jail in the early mornings before she went to her job as a Nurse Practitioner at Picayune Urgent Care. Lumpkin sometimes met with inmates in the medical room at the jail, but most inmate visits were handled by jail staff nurses. Lumpkin had no supervisory or policy-making responsibilities with respect to the health care plan for the jail. While Lumpkin prescribed medications for inmates, Pearl River County employees picked up, administered or made medication available to the inmates. See, Lumpkin affidavit [104-2]

---

[7]There is no mention of any such incident in the daily journal Burke recorded while he was in jail. [110, pp. 48-62, bates 48-61]

The procedure for medical visits at the jail required inmates to fill out a request to see the nurse and give it to designated facility employees. Inmates were brought into the medical room a few at a time to meet with Lumpkin or other nurses. On the days she came to the jail, Lumpkin stayed until she had seen all inmates with medical complaints or reviewed all necessary medical charts of treatments and prescription orders. Lumpkin met only with inmates who requested to see a nurse, and when she was not there, inmates who needed immediate medical attention were taken to a local hospital by Pearl River County employees. See, Lumpkin affidavit [104-2].

Lumpkin met with Burke several times while he was incarcerated at the jail, diagnosing and treating Burke's various medical complaints, addressing his medical needs for high blood pressure, and his complaints of pain, cardiac and dental problems, and prescribing appropriate medications for his medical conditions. Lumpkin denies that she ever refused to meet with Burke, that she refused to prescribe necessary medications, or that she ignored his medical needs or complaints. Her affidavit states she provided Burke medical treatment to the best of her ability based on her skill, knowledge and training as a Nurse Practitioner, and that had she felt he required additional treatment, she would have given it, ordered that it be given by another nurse, or sent him to an outside medical facility. See, Lumpkin affidavit [104-2].

Burke considers his medical claim the "main thing" in this lawsuit. [104-3, p. 31] He claims his medical care during his incarceration at Pearl River County Jail was improper, that medications were not regularly given, and he was taken off all medications, including his blood pressure medication, when he was put in the jail in November 2008. He testified he was on clonidine for blood pressure, Soma for muscle spasms, diazepam for muscle spasms and anxiety attacks and Roxicodone for pain, all these medications being prescribed by Dr. Simnicht. He

stated he had been on blood pressure medication for ten years,[8] and diazepam since 2003.[9] [104-3, pp. 43-45] Burke admits that on November 18, 2008, he saw somebody for screening [104-3, p. 48-49], and his inmate/medical records contain a medical intake screening performed that date, in which he stated he "has or has had" asthma, high blood pressure, kidney problems, hay fever, seizures, hepatitis B, and bad teeth current, and indicated his current medications were clonidine, roxicodone, soma, and albuterol breathing medicine. [110, pp. 99-100, 110-2, p.4, bates 99-100, 104] No evidence indicates Rita Lumpkin was involved in the initial screening.[10] Burke's daily journal indicates he went to medical on November 19, 2008, and got his blood pressure checked. [110, p. 48, bates 48] Burke's inmate/medical records from the jail show that Cecile Wheat, LPN, requested his medical records from Dr. Simnicht on November 20, 2008. [110-4, p. 22, bates 237]

    Burke testified when he saw Lumpkin, he told her the medications he was on before coming to jail, but when she checked his blood pressure, it was not high and she said he did not need medication. [104-3, pp. 50-51] Lumpkin first appears in Burke's medical records on November 28, 2008, when Burke was seen at sick call for complaints of chest pain and tooth pain of two days duration. He was found to have a dental abscess, for which Lumpkin prescribed amoxil 500 mg, ibuprofen 400 mg, and told to rinse with warm salt water after meals. Burke states he received blood pressure medication on December 2, 2008, and has been on medication

---

[8] Burke told Dr. Simnicht in March 2008 he had been off his clonidine. His blood pressure at that time was 120/80. [110-4, pp. 7-8, bates 222-223]

[9] None of Burke's medical records, including those received from Dr. Simnicht, mentions diazepam.

[10] Burke was arrested at noon on November 18, 2010, and booked into the jail at 3:11 p.m. [110, p. 96, bates 96] Lumpkin's hours at the jail were usually in the early morning before she went to her other job. [104-2, p. 2]

ever since [104-3, p. 54]. However, on November 29, 2008, Lumpkin ordered that clonidine be added for his blood pressure, that the HCTZ he was taking for blood pressure be continued, that he be given a soft diet, and an appointment with "Dr. Carmichael, cardio." [110-4, pp. 1-4, bates 216-219] And Burke's own daily journal indicates he received blood pressure medication at the second med call on December 1, l2008. [110, p. 5, bates 5] On December 2, 2008, Lumpkin gave verbal orders that Burke could see Dr. Rester (cardiologist) at Southern Heart Center at Highland Hospital on December 19, 2008. [110-4, pp. 1, 9, bates 216, 224] On December 4, 2008, following a medication evaluation, Lumpkin noted Burke was on clonidine and HCTZ, and ordered he also be given Diltiazem (another blood pressure medication). [110-4, p. 9, bates 224]

On December 6, 2008, Burke asked to see Lumpkin for his blood pressure, tooth pain and liver problems, stating he needed a blood test to check his liver enzymes. Lumpkin ordered a CMP lipid panel on December 9, 2008. [110-4, pp. 1, 10, bates 216, 225] On December 14, 2008, Burke complained of blood pressure trouble, and was found to have a blood pressure of 124/80. [110-4, p. 2, bates 217] On December 15, 2008, Lumpkin increased his clonidine to .1mg twice daily, continued his HCTZ and discontinued the Diltiazem. [110-4, p. 1, bates 216]

On December 19, 2008, Burke was taken to Highland Hospital for lab work, including a CMP lipid panel, then to his appointment with Dr. Rester at Southern Heart Center, who prescribed a stress test and echocardiogram. [110-4, p. 45, 48, bates 260, 263] These tests, performed January 7, 2009, proved negative for ischemia by EKG criteria, and Burke's blood pressure response to exercise showed an elevated systolic response and exercise endurance below average for his age. [110-4, pp. 5-6, bates 220-21] Burke testified the doctor told him there was nothing wrong with his heart, that his problem was with his neck and he would probably need an

6

orthopedic specialist. [104-3, p. 58] The doctors' reports do not reflect any finding regarding Burke's neck. [110-4, pp. 5-6, bates 220-21]

On January 3, 2009, Burke complained of a toothache and ear pain for which the nurse prescribed amoxicillin and ibuprofen and requested a dental appointment for him. [110-4, p. 41, bates 256] On January 26, 2009, Dr. Lambert, a dentist, performed a root removal and ordered that the sutures could be removed February 2, 2009. [110-4, p. 46, 39, bates 261, 254] Burke testified he had four bad teeth, and had one extracted by a dentist about a month before he was locked up. Before that time, the last dental work Burke had done was in 2003 by the Mississippi Department of Corrections. [104-3, pp. 58-60]

On January 19, 2009, Burke complained of pain in his chest, shoulders and right arm. When he was seen by medical staff the same day, he denied any chest pain or shoulder pain and was found to be in no acute distress. [110-3, p. 38, bates 253] on February 17, 2009, Burke again complained of chest pains. When Lumpkin saw him on February 20, 2009, he complained of his neck, shoulder, and arm numbness, but denied any neck injury, and Lumpkin found him to have full range of motion. [110-4, p. 37, bates 252] Burke was prescribed prednisone February 20, 2009, and a C-Spine x-ray was ordered. [110-4, p. 55, bates 270] On April 13, 2009, Lumpkin saw Burke for complaints of psoriasis flare-up, and prescribed prednisone. [110-4, p. 54, bates 269] On April 29, 2009, Burke again complained of pain in his chest, arms and shoulders, but said he had "seen Rita already." His records indicate he was again seen by the Nurse Practitioner on May 7, 2009; and Lumpkin found he had full range of motion in his neck, and again recommended a C-spine x-ray. [110-4, pp. 35, 54, bates 250, 269] Burke was released to the Mississippi Department of Corrections on May 14, 2009.

Summary Judgment Standard

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. Rule 56(c) mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). On a motion for summary judgment, the Court considers "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). Rule 56(e) provides in part:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading, rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. <u>If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.</u>

*Fed. R. Civ. P.* 56 (e) (emphasis added). The Court may grant a motion for summary judgment which is accompanied by competent supporting evidence if the opposing party fails to present controverting evidence. *Fed. R. Civ. P. 56 (e).* Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir.), *cert. denied*, 506 U.S. 973, 113 S. Ct. 462, 121 L. Ed. 2d 371 (1992).

The moving party must show the absence of a genuine issue of material fact by affidavit or other evidentiary materials. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548,

2552, 91 L. Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 n.2, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986). For the Court to find there are no genuine material factual issues, the Court must be satisfied that no reasonable trier of fact could find for the nonmoving party, *i.e.*, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict for him. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249-50, 106 S. Ct. at 2510-11 (1986).

If the movant establishes the absence of a genuine issue of material fact, then "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994), *citing Celotex*, 477 U. S. at 325, 106 S. Ct. at 2553-54. The nonmovant cannot discharge this burden by simply referring to allegations or denials in his pleadings, but must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue as to a material fact exists. See *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); Fed.R.Civ.P. 56(e). If the nonmovant fails to present evidence showing a genuine issue of material facts exists, "the summary judgment motion must be granted." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

<u>Deliberate Indifference to Serious Medical Needs</u>

To establish a constitutional violation due to deliberate indifference to serious medical needs, a prisoner bears the burden of proving: (1) the Defendant was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) that the Defendant actually drew that inference; and (3) that the Defendant's response indicated that they intended that the

9

harm occur. *Thompson v. Upshur County TX, et al*., 245 F.3d 447 (5th Cir. 2001); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (plaintiff must show officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs"). In other words, Burke was required to show that Lumpkin's deliberate indifference to his serious medical needs unnecessarily and wantonly inflicted harm on him.[11] Deliberate indifference cannot be inferred from a negligent, or even a grossly negligent, response to a substantial risk of serious harm. *Id.* To act "deliberately" means to act intentionally; that is, knowingly and voluntarily and not because of mistake or accident. Disagreement with medical treatment alone will not support § 1983 liability. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Even inadequate medical care does not automatically establish a constitutional violation:

> [n]ot all inadequate medical care rises to the level of an Eighth Amendment violation; "[it] is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." A plaintiff must prove "objectively that he was exposed to a substantial risk of serious harm: and that "jail officials acted or failed to act with indifference to that risk" which requires actual knowledge and disregard.

(Footnotes omitted). *Victoria W. v. Larpenter*, 369 F.3d 475, 483 (5th Cir. 2004).

Applying this standard to the this case, the Court finds Burke has failed to carry his burden with respect to his claim against Rita Lumpkin, and he has admitted that he did not notify Sheriff Allison of his medical complaints. [22-2] Burke's records show that within ten weeks of his November 18, 2010 arrival at the jail, he had received medical attention by jail personnel on at least nine occasions, his outside medical records had been requested, he had been prescribed medications, had been taken to the hospital for lab work, had been evaluated by a cardiologist,

---

[11] *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976).

had numerous tests including a stress test and echocardiogram, and had seen a dentist for extraction of a bad tooth. The evidence before the Court indicates Burke's medical care was ongoing, and that his complaints were addressed, and medication was prescribed where deemed medically necessary.

A finding of deliberate indifference "must rest on the facts clearly evincing 'wanton' actions on the part of the defendants." *Johnson v. Treen,* 759 F.2d at 1238. The facts of this case do not demonstrate such wanton actions. The evidence before the Court indicates Burke was provided reasonable medical care for his complaints by Nurse Lumpkin and other jail medical personnel, as well as outside health care providers. Mere negligence, neglect or even medical malpractice do not constitute a valid § 1983 claim ( *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1991), nor does an inmate's disagreement with the medical treatment he receives suffice to establish a violation of his constitutional rights. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Prison officials are not liable for denial of medical treatment unless they know of and disregard an excessive risk to inmate health or safety. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). Burke's admission that he did not notify Sheriff Allison of his medical complaints [22-2], his failure to come forward with evidence to establish that Rita Lumpkin or Pearl River County medical personnel were deliberately indifferent to his serious medical needs, and his failure to show the existence of any policy or custom of Pearl River County to deny inmates constitutionally adequate medical care warrant dismissal of this claim.

Although the Court does not perceive Burke's claim as a state law medical negligence claim, but even if it were, since he has produced no evidence of compliance with statutory prerequisites for filing such a claim, he could not prevail under state law. It is therefore,

**ORDERED AND ADJUDGED** that Rita Lumpkin's motion for summary judgment is granted and Plaintiff's deliberate indifference to serious medical needs claim is dismissed.

SO ORDERED, this the 24th day of September, 2010.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE