# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**MARK BEASON BURKE**                                           **PLAINTIFF**

**VERSUS**                                         **CIVIL ACTION NO. 1:08cv1496-RHW**

**DAVID ALLISON, RITA LUMPKIN**
**and PEARL RIVER COUNTY**                                      **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court are [80] Defendant David Allison's motion for qualified immunity filed October 15, 2009, and motion [106] to dismiss or for summary judgment filed by Allison and Pearl River County on February 19, 2010, along with [112] Plaintiff's response to the motions. The Court having reviewed the pleadings on file, the exhibits, memoranda and arguments submitted by the parties, and applicable law finds as follows:

### Procedural History and Facts

Mark Burke filed this *pro se* prisoner's civil rights complaint December 22, 2008, pursuant to 42 U.S.C. § 1983. On July 23, 2009, the Court conducted a hearing pursuant to 28 U.S.C. §1915A[1] to examine the allegations contained in the complaint. The parties consented to the exercise of jurisdiction by a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c) and *Fed.R.Civ.P*. 73, and the case was reassigned to the undersigned for all further proceedings. [ 95] and [96]

---

[1] 28 U.S.C. §1915A. Screening.
    (a) Screening. The Court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

Burke complains in this lawsuit about the conditions of confinement during his periods of incarceration in the Pearl River County Jail beginning in 2005.[2] Burke testified at the screening hearing that he was in the jail on a charge of possession of a controlled substance, on which he was first arrested just after Hurricane Katrina,[3] but that he bonded out of jail within about three days. He stated his bondsman went off his bond in February 2008, and he spent approximately three weeks in jail before again making bond in March of that year. Burke's inmate file reflects that he was incarcerated in the Pearl River County jail on several occasions after his 2005 arrest:

- Arrested and released on March 16, 2006 [110-2, p. 24, 33, bates 124, 133].

- Arrested March 3, 2007 for public drunk and misdemeanor possession of controlled substance [110-3, pp. 10-16, bates 200-201], released on bond March 5, 2007 [110-3, p. 4-8, bates 194-196].[4]

- Arrested November 3, 2007 for profanity/drunkenness in public [110-2, p. 16, bates 116], released on payment of fines November 3, 2007 [110-2, p. 12, bates 112].

- Arrested March 5, 2008 for possession of a controlled substance [110-2, pp. 86-90, bates 186-190 and 110-3, pp. 1-3, bates 191-193], released on bond March 6, 2008 [110-2, p. 79-84, bates 179-184].

- Arrested April 2, 2008 for possession of a controlled substance [110-2, p. 63, bates 163], released on bond April 22, 2008 [110-2, p. 59, bates 159].

- Arrested April 25, 2008 for public drunk, released the same day on bond [110-2, pp. 71, 75, bates 171, 175].

- Arrested May 6, 2008 for simple assault [110-2, pp. 34, bates 151], released on bond May 16, 2008 [110-2, p. 33-37, bates133-137].

---

[2]By [103] order of February 8, 2010, the Court dismissed Burke's claims for denial of access to courts, restriction of free exercise of religion and failure to protect. Burke admittedly did not notify Allison of any medical complaint [22-2], and his claim for deliberate indifference to serious medical needs is dismissed by separate memorandum opinion and order entered contemporaneously herewith granting [104] Rita Lumpkin's motion for summary judgment.

[3]Hurricane Katrina struck on August 29, 2005.

[4]Sealed exhibits are referenced by both the docket entry and the bates number.

- Arrested November 18, 2008 on two charges of possession of a controlled substance[5] and bond revoked, remained confined at Pearl River County until his transfer to the Mississippi Department of Corrections on May 14, 2009. [110, p. 1, bates 1]

Burke pled guilty to possession of a controlled substance, and was sentenced March 16, 2009, to eight years in custody of the Mississippi Department of Corrections, with four years to serve, and four years post-release supervision. At the time of the July 23, 2009 hearing, he was incarcerated at South Mississippi Correctional Institution at Leakesville, MS. [106-4, pp. 7-11]

Burke's original complaint alleged the following conditions of confinement violated his civil rights: unclean drinking water; overcrowding which sometimes requires inmates to sleep on the floor; unsanitary living conditions – the zones are not cleaned on weekends, standing water in the shower or sewage backing up, black mold in the shower, water dripping from the shower ceiling, leaking toilets; infrequent yard call; cold food, with water being the only drink served with two meals a day, and the food does not contain sufficient vitamins and minerals; mail is not timely delivered and legal mail is opened before delivery; no case worker; telephones seldom work; the staff verbally abuses inmates; dust in air vents; and lack of pest control for ants and spiders. [1] Plaintiff also complained he was not provided a change of clothes for several weeks, was not given haircuts, and had inadequate access to personal hygiene items such as razors and nail clippers. [12], [15]

At the screening hearing, Burke elaborated on his complaints, testifying that sometimes the tap water was discolored and had an odor, so he bought water off the canteen. He conceded that the water did not make him ill. [106-4, pp. 14-16, 19] His complaints about unsanitary living conditions included the presence of mold and standing water in the showers, sewage backing up, leaking toilets and toilets that would not flush. Burke testified the plumbing

---

[5]Burke testified he actually had three possession of controlled substance charges; he pled guilty to one, and the other two were nolle prosequi. [106-4, p.9-10]

problems occurred at times of heavy rainfall, and the facilities worked correctly once the ground dried up, and he admitted the plumbing malfunctions did not make him ill. [106-4, pp. 16-19, 22-25] He stated that since leaving Pearl River County he has tested positive for TB, and that there is staph infection in the Pearl River County jail. Although he was never diagnosed with a staph infection, he claims he had one on his leg that "just festered up and busted." He conceded the problem resolved, and he did not mention this problem in his daily log [110, pp. 48-62, bates 48-62] because "that was not really one of [his] major concerns at that time." [106-4, pp. 16-19] He conceded that cleaning supplies were provided five days a week, but not on weekends. [106-4, pp. 22-23]

Burke also complained the food was always cold, though toward the end of his final stay, the jail got hot trays in warmers. He further complained that inmates were often served water with their meals instead of juice or tea, and contends he could tell the food had insufficient vitamins and minerals because when he does not get enough vitamins, he gets "bad red splotches." He complained that one sometimes had to wait to get a line out to make telephone calls from the zone, and that overcrowding resulted in his having to sleep on the floor for about a week with a mat and a sheet at the beginning of his final incarceration at the jail, the rest of the time he had a bunk. [106-4, pp. 23-26]

Burke complained there were ants and spiders in the jail, and that it was "unpleasant" because the ants would get into your locker box and into your food. There was dust in the air vents which stopped up his sinuses, for which he got medicine from the nurse or from the canteen. Inmates were not provided razors or nail clippers, but could use the clippers in the medical area to cut their nails. He shaved with electric hair clippers. [106-4, pp. 27-29]

## Summary Judgment Standard

Summary judgment is appropriate where no genuine issue of material fact remains to be

decided and the moving party is entitled to judgment as a matter of law. Rule 56(c) mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). On a motion for summary judgment, the Court considers "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). Rule 56(e) provides in part:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading, rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. <u>If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.</u>

*Fed. R. Civ. P.* 56 (e) (emphasis added). The Court may grant a motion for summary judgment which is accompanied by competent supporting evidence if the opposing party fails to present controverting evidence. *Fed. R. Civ. P. 56 (e)*. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir.), *cert. denied*, 506 U.S. 973, 113 S. Ct. 462, 121 L. Ed. 2d 371 (1992).

The moving party must show the absence of a genuine issue of material fact by affidavit or other evidentiary materials. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 n.2, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986). For the Court to find

there are no genuine material factual issues, the Court must be satisfied that no reasonable trier of fact could find for the nonmoving party, *i.e.*, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict for him. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249-50, 106 S. Ct. at 2510-11 (1986).

If the movant establishes the absence of a genuine issue of material fact, then "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994), *citing Celotex*, 477 U. S. at 325, 106 S. Ct. at 2553-54. The nonmovant cannot discharge this burden by simply referring to allegations or denials in his pleadings, but must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue as to a material fact exists. See *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); Fed. R.Civ. P. 56(e). If the nonmovant fails to present evidence showing a genuine issue of material facts exists, "the summary judgment motion must be granted." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

<u>Conditions of Confinement</u>

The Constitution does not require that prisoners be provided pleasant surroundings or a comfortable jail. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). The constitutional prohibition against cruel and unusual punishment requires simply that prisoners be afforded humane conditions of confinement, receive adequate food, shelter, clothing and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). To establish a constitutional violation due to conditions of confinement, an inmate must show (1) that prison officials deprived him of "the minimal civilized measure of life's necessities;" and (2) that the prison officials acted out of

indifference to the inmate's health or safety.  *Id*.  To establish indifference, the inmate must show prison officials were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn, and that the officials actually drew an inference that such potential for harm existed.  In deciding the constitutionality of conditions of confinement of pretrial detainees, the Court must determine whether the conditions complained of are imposed for the purpose of punishment.  *Bell v. Wolfish*, 441 U.S. 529, 538-539 (1979).

That Burke had to sleep on the floor for a few days does not establish a constitutional violation.  Overcrowding of inmates is not *per se* unconstitutional, *Rhodes v. Chapman*, 451 U.S. 337, 347-350, 101 S.Ct. 2392 (1981), nor does the temporary inconvenience or discomfort of having to sleep on a mat on the floor amount to a constitutional violation.  Pretrial detainees have no right to an elevated bed.  *Mann v. Smith*, 796 F.2d 79, 85-86 (5th Cir. 1986).  With respect to his complaints about the food, the Constitution requires that prisoners be served food that provides adequate nutrition, not that it be served hot.  *Logan v. Black*, 983 F.2d 1063 (5th Cir. 1993).  Burke's conclusory allegations that the food was deficient in vitamins and minerals will not defeat summary judgment, nor will his allegation that yard call was infrequently allowed.  Neither the Supreme Court nor the Fifth Circuit has specifically held that prisoners enjoy an absolute right to outdoor exercise.  *See*, *Green v. Ferrel,* 801 F.2d 765, 771-72 (5th Cir.1986).  Mere allegations of verbal abuse by jail staff, even if true, do not present actionable claims under § 1983.  *See*, *Bender v. Brumley*, 1 F.3d 271, 274, n. 4 (5th Cir. 1993).

Burke has neither alleged nor presented evidence of any actual injury from sleeping on the floor, eating cold food, intermittent water and plumbing problems, mold, dust, and lack of cleaning on weekends, ants, slow delivery of mail, and infrequent yard call.  He has come forward with nothing to show that the conditions of which he complains were imposed for the

purpose of punishing inmates at the Pearl River County Jail, nor any evidence to show that such conditions resulted from any official policy or custom. His primary complaint against Sheriff Allison is that the Sheriff was in control of the jail, and hence responsible for all that occurred therein. However, supervisory liability under § 1983 may not be based on *respondeat superior*, but only on the supervisor's own wrongful acts or omissions. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978). It must be based on more than the right to control employees, or simple awareness of employees' misconduct. *Leary v. Daeschner*, 349 F.2d 888, 903 (6th Cir. 2003).

To establish liability of Pearl River County for the conditions about which he complains, Burke is required to show (1) a policy maker; (2) an official policy or custom; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001), citing *Monell v. Dept of Social Services*, 436 U.S. 658, 694 (1978). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578. Since Burke has failed to show any official policy or custom with respect to his claims, he cannot prevail against either Pearl River County or Sheriff Allison in his official capacity.

Although Plaintiff's claims might have been subject to dismissal, the Court is of the opinion that the present motions are best dealt with via summary judgment, which will render moot the motion to dismiss and the qualified immunity motion. Pursuant to applicable law, and from the evidence of record, the Court finds summary judgment appropriate as to Plaintiff's claims against Sheriff Allison and Pearl River County. A separate judgment will be entered in favor of these defendants, and dismissing Plaintiff's conditions of confinement claims. It is

therefore,

**ORDERED AND ADJUDGED**, that the motion for summary judgment is granted, and Plaintiff's claims for conditions of confinement claims are dismissed, and summary judgment entered in favor of Sheriff David Allison and Pearl River County. It is further,

**ORDERED** that the above ruling renders moot Allison's motion for qualified immunity, and the motion to dismiss filed by Allison and Pearl River County.

SO ORDERED, this the 24th day of September, 2010.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE